**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| In re:<br><br>**LAURA KATHERINE ROBARGE,**<br><br>  Debtor | ) ) ) ) ) ) ) ) | Chapter 13<br>Case No. 14-10624-JEB |
| **LAURA KATHERINE ROBARGE,**<br><br>  Plaintiff<br><br>v.<br><br>**CITIZENS BANK, N.A., NATIONAL COLLEGIATE TRUST, EDUCATIONAL CREDIT MANAGEMENT CORP. U.S. BANK, WELLS FARGO EDUCTION FINANCE UNITED STUDENT AID FUNDS, INC.,**<br><br>  Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Adversary Proceeding<br>No. 19-01093JEB |

**MEMORANDUM OF DECISION**

The Plaintiff and Debtor, Laura Katherine Robarge, commenced this adversary proceeding to determine that her student loan obligations to the defendants were dischargeable under Section 523(a)(8) of the Code. Defendants, National Collegiate Student Loan Trust 2006-4, National Collegiate Student Loan Trust 2007-2, and National Collegiate Student Loan Trust 2007-3 (collectively "NCSLT")[1] filed their Motion for Summary Judgment ("Motion") seeking a judgment as a matter of law that the loans owed to NCSLT ("Loans") did not impose an undue hardship on the Debtor. In response to the Motion, the Debtor filed her Opposition and

---

[1] The Complaint and Answer refer to a single defendant, the National Collegiate Trust. The Motion stated that this was an error and identified the individual trusts as defendants.

Cross-Motion for Summary Judgment ("Cross-Motion") seeking a judgment as a matter of law that the Loans do not fall within the student loan exception under Section 523(a)(8). For the reasons set forth below, the Court finds that there are genuinely disputed issues of material fact as to whether the Loans fall within Section 523(a)(8), and, if so, whether the Loans impose an undue hardship on the Debtor. The Court will deny the Motion and Cross-Motion by separate order.

**BACKGROUND**

The background below reflects the facts relevant to this decision that are undisputed at least for purposes of the Motion and Cross-Motion, except as otherwise noted. The Court has not included facts or background that are not relevant to this decision. The Court has also not reconciled minor discrepancies, unless material or relevant to the rulings.

The Debtor obtained a Bachelor of Science in interior design from the University of Bridgeport in 2005. Beginning in 2006, the Debtor pursued a master's degree in business from the University of New Haven through an executive program for working professionals. The program met one day a week. The cost of tuition for the entire program during this period was in the range of $44,000 to $49,840.

The Loans are comprised of four loans that the Debtor borrowed or co-signed from Charter One Bank, N.A., a private lender. The Loans were granted between August 2, 2006, and August 1, 2007. Charter One subsequently assigned the Loans to NCSLT.

The Debtor borrowed $85,000 from Charter One under three separate loan agreements. One agreement referred to the Next Student Undergraduate Loan Program. The other two loan agreements referred to Next Student Graduate Loan Program. Each of the loan agreements referenced the University of New Haven as the applicable school. All of the proceeds from these

2

three Loans were disbursed directly to the Debtor.

In addition, the Debtor cosigned a loan for her sister, Elizabeth Ostler, to borrow $3,000.00 from Charter One pursuant to the Next Student Undergraduate Loan Program. The cosigned Loan stated that the University of Bridgeport was the applicable school. The funds from this Loan were disbursed to the Debtor and her sister.

Each of the loan agreements included language that the loan was made pursuant to a program funded in whole and in part by a nonprofit, The Education Resources Institute, Inc. ("TERI"). Each loan agreement also included a certification that the funds were to be used only for the costs of attendance at the school.

The Debtor has been regularly employed over the years. Her last employment in the interior design field was in 2008. The Debtor's subsequent employment included work as a children's nanny and as a technical support adviser making less than $20.00 an hour. Although the Debtor made payments on her student loans, she was unable to keep current and fell in default on her student loans. As of the filing of the Motion, the Loans were in excess of $140,000.

The Debtor is separated and has sole custody of her two children, who were 5 and 9 at the time the Motion was filed. The Debtor is currently employed, receiving net pay of approximately $498 a week, for an annual net income of approximately $25,896. Her estranged husband pays the mortgage of approximately $1,700 a month. His sole form of financial support is payment of the mortgage, which will continue until the children are emancipated. The Debtor's remaining monthly expenses are $2,565, or approximately $30,780 on an annual basis. Accordingly, the Debtor's current income is insufficient to meet her current expenses. NCSLT does not contest the Debtor's expenses, except for an expense for diapers, which the Debtor contends are

necessary given her children's medical conditions.

The Debtor suffers from chronic anemia which requires regular repeated treatments. In addition, each of her children has medical conditions that require regular treatments, resulting in out-of-pocket medical expenses. NCSLT disputes that the medical conditions create financial burdens or affect the Debtor's ability to work.

The Debtor filed the above Chapter 13 proceeding on February 20, 2014. After completing her confirmed Chapter 13 plan, she received a discharge on July 8, 2019. The Debtor commenced this adversary proceeding against NCSLT and the other defendants to determine that her student loan debts were discharged pursuant to Section 523(a)(8) of the Code.

In support of the Motion, NCSLT filed an affidavit of Bradley Luke ("Luke Affidavit"), who works for the company maintaining business records for NCSLT. The Luke Affidavit attached the loan agreements. In the Luke Affidavit, Luke stated that TERI acted as guarantor for the Loans and as guarantor for the "Charter One loan program." Motion, Ex. E. The Luke Affidavit did not state the basis for his conclusion, nor did it attach any agreements or guarantees by TERI.

NCSLT also included the transcript of the Debtor's deposition during this proceeding. Her deposition included the following exchange:

> Question: Okay. If you could pay back -- if you -- if you could pick a number to pay back your student loans -- a monthly number that you could live with, what would it be?
>
> Answer: I mean, I -- I could probably do like 3-400.

Motion, Ex. A, p. 75.

**DISCUSSION**

As more fully discussed below, neither NCSLT nor the Debtor are entitled to judgment as a matter of law. There are genuinely disputed issues of material fact regarding whether the Loans

4

fall within the Section 523(a)(8) exception to discharge. There also remain genuine issues of material fact regarding whether the Loans impose an undue hardship on the Debtor.

### I. Applicable Law

#### A. Summary Judgment Standard

To prevail on summary judgment, the moving party must demonstrate that there is no genuinely disputed material fact and that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) made applicable by Fed. R. Bankr. P. 7056; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). To support the motion, the moving party can cite specific parts of the record or identify the nonmoving party's evidentiary shortcomings. Fed. R. Civ. P. 56(c). Once the moving party makes such a showing, the burden shifts to the party opposing summary judgment to establish that there is a genuine issue of material fact with respect to an essential element of the claim or defenses. *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir. 1989). A material fact is one that will affect the outcome of trial under the substantive law. *Anderson,* 477 U.S. at 248. A dispute is genuine if there is sufficient evidence to support a finding for the nonmoving party at trial. *Id.*

In determining whether summary judgment must be granted, the court must view the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in favor of such party. *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). The court does not weigh evidence. *Anderson,* 477 U.S. at 249.

#### B. Section 523(a)(8) – Student Loan Exceptions

Section 523 of the Code sets forth the debts that are excepted from an individual debtor's discharge. Consistent with the "fresh start" policy of the Code, exceptions to a debtor's discharge are narrowly construed. *In re Stewart*, 948 F.3d 509, 520 (1st Cir. 2020). The same principle of

narrow construction applies to the student loan exceptions to discharge. *In re Page*, 592 B.R. 334, 338 (8th Cir. BAP 2018).

Section 523(a)(8) of the Code excepts certain student loan debt from discharge unless the debt would impose an undue hardship on the debtor and the debtor's dependents. 11 U.S.C. § 523(a)(8). Not all educational debt is included in Section 523(a)(8). To qualify, the student loan debt must be one of the following: (i) an educational loan or benefit made or guaranteed by a governmental unit, or under any program funded in whole or in part by a governmental unit or a nonprofit institution; (ii) the obligation to repay funds received as an educational benefit, scholarship or stipend; or (iii) a qualified education loan as determined under Section 221(d)(1) of the federal tax code. *Id*. The creditor bears the initial burden of establishing that the debt falls within Section 523(a)(8). *In re Bronsdon*, 435 B.R. 791, 796 (1st Cir. BAP 2010). The standard of proof is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287 (1991).

A student loan granted by a private lender can meet the requirements of Section 523(a)(8) if it is issued pursuant to a program "funded in whole or in part" by a nonprofit or governmental agency. The nonprofit is not required to provide actual funds. *In re Gakinya*, 364 B.R. 366, 374 (Bankr. W.D. Mo. 2007). Instead, the issue is whether the nonprofit played a meaningful role in providing funds for the program. *In re Hammarstrom*, 95 B.R. 160, 165 (Bankr. N.D. Cal. 1989). Courts look to whether the nonprofit committed financial resources to the program, provided a key role in procurement of the loans, or contributed something of value to make the program successful. *In re Page*, 592 B.R. at 337. The guaranty by a nonprofit of all or part of the loans under the program can satisfy the funding requirement. *In re Greer-Allen*, 602 B.R. 831, 836-37 (Bankr. D. Mass. 2019).

A lender can also establish that the loan meets the requirements for a qualified educational loan, as defined under the tax code. To fall within the definition, the loan must be made solely to pay cost of attendance for an eligible student at an eligible educational institution. 26 U.S.C.A. § 221. The definition of cost of attendance includes not only tuition, but also books, supplies, reasonable room and board and other costs. *See* 20 U.S.C.A. § 1087ll. The determination is based on the initial purpose of the debt, not the actual use of the proceeds. *In re Conti*, 982 F.3d 445, 449 (6th Cir. 2020). But courts look beyond the boilerplate in the loan agreement to determine whether there is other evidence that the loan was not intended to be solely for the costs of attendance. *See In re Fernandez-Lopez*, No. DL 14-01520, 2021 WL 5312990 (Bankr. W.D. Mich. Feb. 10, 2021).

### C.    Section 523(a)(8) – Undue Hardship

If the debt falls within Section 523(a)(8), then the burden of proof shifts to the debtor on the issue of undue hardship. *In re Bronsdon*, 435 B.R. at 796. This Court has adopted the totality of circumstances test to determine whether a debtor has shown undue hardship. *See In re Satcher*, No. 05-24716-JEB, 2025 WL 2831529 (Bankr. D. Mass. Oct. 6, 2025). Under this test, courts consider

> (1) the debtor's past, present, and reasonably reliable future financial resources;
> (2) a calculation of the debtor's and her dependent's reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding each particular bankruptcy case.

*In re Long*, 322 F.3d 549, 554 (8th Cir. 2003). The key question is: "Can the debtor now, and in the foreseeable future, maintain a reasonable, minimal standard of living for the debtor and the debtor's dependents and still afford to make payments on the debtor's student loans?" *In re Hicks*, 331 B.R. 18, 31 (Bankr. D. Mass. 2005).

II.   Analysis

A.   **Whether the Loans Fall within Section 523(a)(8)**

There are genuinely disputed issues of material fact that must be resolved to determine whether the Loans fall within one of the categories under Section 523(a)(8). It is undisputed that the Loans were issued by a private lender. It is also undisputed that the debt was a loan, and not a stipend or benefit. Accordingly, NCSLT bears the burden of proof to demonstrate that the Loans (i) were issued under a program funded in whole or in part by a nonprofit, or (ii) were otherwise qualified educational loans.

Considering the evidence in the light most favorable to NCSLT, NCSLT has provided sufficient evidence to show that there are genuinely disputed issues of fact regarding whether the Loans were issued under a program funded by a nonprofit. NCSLT provided the loan agreements, which state that each loan was made under a program funded in whole or part by the nonprofit TERI. NCSLT also provided checks issued on an account showing TERI as the account holder. Finally, NCSLT submitted the Luke Affidavit, in which Luke stated that the Loans were guaranteed by TERI and that TERI funded the "Charter One Loan Program." NCSLT also provided evidence that TERI funded other programs with Charter One.

The evidence, however, is not sufficient to determine as a matter of law that the Loans were granted under a program funded by TERI within the meaning of Section 523(a)(8). While the loan agreements included statements that the program was funded by TERI, such evidence alone is insufficient to meet NCSLT's burden. *See In re Greer-Allen*, 602 B.R. at 836-37. NCSLT fails to provide any evidence regarding the particular programs, the Next Student Undergraduate Loan Program and the Next Student Graduate Loan Program. No evidence was submitted regarding any agreements between TERI and Charter One regarding these programs,

8

or a guaranty of all or some of the loans in these programs. The Luke Affidavit does not state the basis for his conclusion that the Loans were guaranteed. Nor does the Luke Affidavit identify the specific programs, the Next Student Undergraduate Loan Program and the Next Student Graduate Loan Program, instead referring to "the Charter One student loan program," without explanation regarding the program. There is no evidence of what role TERI played with respect to the programs under which the Debtor borrowed the Loans, or that TERI contributed to making such programs successful.

NCSLT has also provided sufficient evidence that the Loans may be considered qualified educational loans, raising a disputed issue of fact. NCSLT again relies on the agreements which reference that the Loans are to be used solely for costs of education. While such evidence raises an issue of material fact, without more, the evidence is insufficient to entitle NCSLT to judgment as a matter of law. *See In re Fernandez-Lopez*, 2021 WL 5312990. The Debtor has submitted evidence that there was a wide disparity between the actual cost of attendance and the amount borrowed by the Debtor. All of the proceeds were paid directly to the Debtor, not to the schools. There is no evidence what steps were taken to verify or confirm the costs of attendance, beyond the boiler plate language of the agreement. Given the foregoing, the evidence submitted by NCSLT is insufficient to find judgment as a matter of law that the Loans were qualified educational loans within the meaning of Section 523(a)(8)(B).

    **B.**    **Whether the Loans Pose an Undue Hardship**

The Debtor has raised genuinely disputed issues of material fact regarding her ability to repay the Loans when considering her past, present, and future financial condition. NCSLT relies on selective evidence and statements to argue that the Loans do not impose an undue hardship. But the Court must consider the totality of the circumstances and draw any inferences in favor of

the Debtor.

The Debtor has submitted evidence regarding her ability to repay any amount on the Loans given (i) the ongoing shortfall in her current expenses; (ii) the loss of support in the future for her housing expenses; (iii) her employment history which reflected an inability to obtain sufficient income to meet her expenses; and (iv) medical issues that may limit her options for employment. Although the Debtor has been employed regularly, her income has not been at a level to pay current expenses and student loan debt. The Debtor has provided evidence that her current income is insufficient to meet her regular monthly expenses before any repayment of the debt. NCSLT does not contest the Debtor's expenses, except for an expense for diapers, which the Debtor contends are necessary given her children's medical conditions. Even excluding such expense, the income is insufficient to pay the expenses as well as repay the Loans.

There also remain genuine issues of material fact regarding the effect of the medical condition of the Debtor and her children on her finances. NCSLT disputes that the medical conditions pose a significant expense or impediment for the Debtor's financial future. But the Debtor has raised sufficient questions to require the issue to be considered at an evidentiary hearing.

NCSLT's reliance on the Debtor's response in her deposition is not conclusive proof that she can repay the Loans. As phrased, the question was unclear and speculative. The questioner began by asking the Debtor to speculate "if you could pay back the loan," how much could she pay. The Debtor's response that she could "probably" pay $300 to $400 directly contradicts the other evidence of her finances. The Court must consider the credibility of the Debtor in light of all of the evidence, not merely a single response to a speculative question.

The Debtor's age is also not the sole determination of her ability to repay the Loans.

10

NCSLT relies heavily on the fact that the Debtor is only 39 years old, comparing her case to cases of other debtors that were older. But each case is determined on its own merits, and there is no brightline test for undue hardship based on age. Instead, the Court must consider the totality of the circumstances as to whether the Loans impose an undue hardship.

Drawing all inferences in the Debtor's favor, there remain genuinely disputed issues of material fact regarding the Debtor's ability to repay any amount on the Loans and whether the Loans constitute an undue hardship.

**CONCLUSION**

For the foregoing reasons, the Motion and Cross-Motion will be denied by separate order. The Court will set a deadline for the parties to file a final pretrial memorandum and schedule a final pretrial conference.

Dated:    January 5, 2026

By the Court,

Janet E. Bostwick
United States Bankruptcy Judge